**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**        :

  v.                                    **Case No. 2:12-cr-48**
                                    :        **Judge Sarah D. Morrison**

**DAVID L. SHOPE,**

                                     :
        **Defendant.**

**OPINION AND ORDER**

This matter is before the Court on Defendant David L. Shope's Motion for Compassionate Release. ("Mot. for Release," ECF No. 48.) The Government has filed its Response (ECF No. 50), and Mr. Shope has filed a Reply (ECF No. 51). This matter is now ripe for consideration. For the reasons set forth below, Mr. Shope's Motion is **GRANTED**.

**I.    BACKGROUND**

Defendant David L. Shope is an inmate at Federal Correctional Institution ("FCI") Fort Dix in New Jersey. On March 26, 2012, Mr. Shope plead guilty to one count of conspiracy to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (ECF Nos. 8, 13.) On August 23, 2012, Mr. Shope was sentenced to five years' imprisonment for each count, to be served consecutively. (ECF No. 33.) Mr. Shope self-reported to the Bureau of Prisons ("BOP") later that month. (Mot. for Release, 12.)

1

Shortly before being charged, Mr. Shope underwent surgery, which involved placing a rod and screws into his left leg.[1] (Shope Decl., ¶¶ 5–7, ECF No. 48-1.) The surgeon required Mr. Shope to wear a brace and specially-fitted shoe to aid in his recovery. (*Id*. at ¶ 7.) By the time he self-reported to prison, Mr. Shope had not yet received the specially-fitted shoe. (*Id*. at ¶ 8.) BOP staff immediately confiscated the leg brace. (*Id*. at ¶ 9.) As a result, Mr. Shope "was forced to walk on [his] completely unhealed and raw leg." (*Id*.) Within weeks, Mr. Shope "felt a snap in [his] leg"—the rod had broken. (*Id*. at ¶ 10.) Mr. Shope alleges that he was not able to "see a real doctor" for three weeks thereafter. (Id. at ¶ 12.) When he was finally seen, the doctor "asked [him] why [he] was . . . not [at] a medical prison" and referred him to an orthopedic surgeon. (*Id*.) It was nine months before Mr. Shope saw that orthopedic surgeon. (*Id*. at ¶ 13.) In the intervening stretch, Mr. Shope's leg had become badly infected. (*Id*.) The rod was visibly protruding. (*Id*.)

On October 5, 2013, Mr. Shope underwent an emergency below-the-knee amputation of his left leg. (Mot. for Release Exh. C, 3, ECF No. 48-4. *See also* Mot. for Release, 12.) Mr. Shope believes that BOP's inattention to his medical needs ultimately caused him to require such an extreme operation. (Mot. for Release, 3. *See also* Shope Decl., ¶¶ 12–14.)

As a result of the amputation, Mr. Shope must rely on assistive mobility devices. However, Mr. Shope has been unable to obtain a properly fitted prosthetic leg, and so is confined to a wheelchair. (Shope Decl., ¶¶ 17–18, 21.) Mr. Shope continues to suffer pain due to irritation and infection of the amputation site. (*Id*. at ¶ 19. *See also* Mot. for Release, 3.) He alleges that FCI Fort Dix "refuses" to treat the infection. (Mot. for Release, 20.) Mr. Shope represents that

---

[1] The Government has neither disputed Mr. Shope's accounting of events, nor offered alternative or additional facts for the Court's consideration. (*See*, Resp., ECF No. 50.) As a result, for purposes of the instant Motion, the facts provided by Mr. Shope are accepted as true.

this pain, along with symptomatic carpal tunnel syndrome, render him unable to care for himself or fully engage in activities of daily life. (*Id*. *See also* Shope Decl., ¶ 20.)

On June 10, 2020, Mr. Shope applied to the Warden of FCI Fort Dix for compassionate release. (Mot. for Release Exh. A., ECF No. 48-2.) The Warden denied Mr. Shope's application on June 26, 2020. (Mot. for Release Exh. B., ECF No. 48-3.) The Warden offered the following explanation, in relevant part:

> In order to meet the criteria as an inmate with a Debilitated Medical Condition, an inmate must be completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair, or capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.
>
> The medical department at FCI Fort Dix advises [Mr. Shope] does not have a terminal medical condition. . . . His orthopedic medical conditions include amputation below the left knee, which limits his functioning in a correctional facility; however, he is able to perform the IADL's and ADL's independently. Currently, his medical conditions are stable, and based on CDC guidelines, [Mr.] Shope does not belong to the high-risk group for severe COVID-19 illness. Accordingly, he does not meet the BOP criteria for compassionate release for debilitated medical condition (non-elderly).

(*Id*. at 2–3.)

Mr. Shope is currently scheduled for release in April 2021. (Mot. for Release Exh. B, 2.) Upon leaving prison, Mr. Shope plans to reside with his brother, Doug, and six-year-old niece. (Mot. for Release, 23.) Doug is gainfully employed and has no criminal history. (*Id*.) Doug hopes to assist Mr. Shope in his physical rehabilitation and return to public life. (*Id*.) Doug's home has been inspected by a probation officer, and approved as Mr. Shope's post-release place of residence. (*Id*.)

## II.  STANDARD OF REVIEW

The law provides limited circumstances in which a sentencing court may "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One such circumstance encompasses "compassionate release." 18 U.S.C. § 3582(c)(1)(A). The First Step Act was

3

designed, in part, to increase the use of compassionate release. See Pub. L. 115-391, Title VI § 603(b), 132 Stat. 5194 (Dec. 21, 2018) (titled "Increasing the use and transparency of compassionate release."). Prior to the enactment of the First Step Act, the Director of BOP had exclusive authority to move for compassionate release. Under the First Step Act, however, a defendant may file such a motion on his own behalf. *Id*. To grant a defendant's motion for compassionate release, the court must make four findings. First, the defendant must have "fully exhausted" his administrative remedies. 18 U.S.C. § 3582(c)(1)(A). *See also U.S. v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Second, the court must find that extraordinary and compelling reasons warrant a reduction in the sentence. 18 U.S.C. § 3582(c)(1)(A)(i). To determine whether extraordinary and compelling reasons exist, the court turns to the United States Sentencing Commission Policy Statement, found in U.S.S.G. § 1B1.13. *See U.S. v. Crawford*, No. 2:18-cr-75-3, 2020 WL 3869480, at *1 (S.D. Ohio July 9, 2020). The Policy Statement provides, in part, that the defendant's medical condition may constitute an extraordinary and compelling reason when the defendant suffers from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility, and from which he is not expected to recover. U.S.S.G. § 1B1.13, n. 1(A)(ii). Third, the factors listed in 18 U.S.C. § 3553(a) must not render a reduction inappropriate. 18 U.S.C. § 3582(c)(1)(A). And, fourth, the court must find that the defendant would not pose a danger to the community if released. 18 U.S.S.G. § 1B1.13(2). *See also Crawford*, 2020 WL 3869480, at *2.

III. ANALYSIS

    A. **Mr. Shope has fully exhausted his administrative remedies.**

First, it is undisputed that Mr. Shope exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). (Resp., 1, ECF No. 50.) Mr. Shope applied to the Warden at FCI Fort Dix for compassionate release on June 10, 2020. He did not file the instant motion until

4

August 17, 2020—well beyond the 30-days required by the statute. The Court will, therefore, move to the merits of Mr. Shope's request.

  **B.**  **Extraordinary and compelling reasons exist to support a reduction in Mr. Shope's sentence.**

Mr. Shope argues that his physical condition and BOP's mismanagement of his medical care constitutes an extraordinary and compelling reason that supports compassionate release. (Mot. for Release; Reply, ECF No. 51.) The Court agrees. Mr. Shope was delivered to BOP custody with an existing medical condition requiring attention and care. The BOP's handling of that condition contributed to the subsequent and irreversible loss of Mr. Shope's leg. The amputation has left Mr. Shope wheelchair bound and in persistent pain. Mr. Shope's allegations of BOP's ongoing inattention to his requests for medical care—and BOP's failure to address, let alone rebut, Mr. Shope's allegations—lead this Court to believe that Mr. Shope will not receive the attention he requires while in BOP custody. *See U.S. v. Beck*, 425 F.Supp.3d 573, 581 (M.D.N.C. 2019) (noting that BOP's failure to acknowledge deficiencies in medical care made the court skeptical of its willingness to provide movant with adequate medical care in the future). As a result, Mr. Shope's medical condition, in combination with his conditions of confinement, constitute an extraordinary and compelling reason to reduce his term of imprisonment.

  **C.**  **The § 3553(a) factors weigh in favor of granting a reduction in Mr. Shope's sentence.**

As to the § 3553(a) factors, the Court finds that they do not render compassionate release inappropriate. Quite the opposite, in fact.

Mr. Shope's crimes pertain to a conspiracy to possess and distribute marijuana. Although the possession and distribution of controlled substances is a non-violent offense, Mr. Shope also plead guilty to a related firearms charge. 18 U.S.C. § 3553(a)(1). However, as Mr. Shope points

out, nothing in the record indicates that he brandished or used the firearm. *Id*. (*See also* Mot. for Release, 26.) Mr. Shope did not have an extensive criminal history prior to the 2012 guilty plea. 18 U.S.C. § 3553(a)(1). Further, Mr. Shope has served eight years—80%—of his ten-year prison sentence. Much, if not all, of that time has been "especially laborious" as a result of his medical condition. *See Beck*, 425 F.Supp.3d at 586. Mr. Shope's time served reflects the seriousness of his crimes and provides just punishment for the offenses. 18 U.S.C. § 3553(a)(2)(A). It further affords adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(B). Finally, as described above, Mr. Shope's release from BOP custody is necessary "to provide [him] with needed . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). On balance, the § 3553(a) factors provide more support for Mr. Shope's request for compassionate release than they do detract from it.

  **D.  Mr. Shope does not pose a danger to the community.**

The Government concedes that Mr. Shope would not pose a danger to the community upon release. (Resp., 6.) The Court finds nothing in the record which would require a contrary finding.

  **E.  The BOP's denial of Mr. Shope's application for compassionate release is not entitled to special deference by the Court.**

The Government's only[2] argument in opposition to Mr. Shope's Motion is that deference ought to be paid to the Warden's determination that Mr. Shope did not qualify for compassionate release. (Resp., 5.) However, the plain language of the statute governing compassion release permits a defendant to move for release over the BOP's refusal to do so on his behalf. 18 U.S.C.

---

[2] The Government also argues that BOP has undertaken extensive efforts to protect inmates from exposure to COVID-19. (Resp., 2.) Unlike many contemporary motions under 18 U.S.C. § 3582(c), however, Mr. Shope does not argue that the COVID-19 pandemic creates the extraordinary or compelling reason justifying a reduction of his sentence. The Court therefore finds this argument irrelevant.

6

§ 3582(c)(1)(A)(i). *See also Beck*, 425 F.Supp.3d at 579 (M.D.N.C. 2019) (explaining that the First Step Act "explicitly allows courts to grant [motions for compassionate release] even when BOP finds they are not appropriate"). What's more, BOP does not look to the Sentencing Commission's Policy Statement—as this Court must—to determine whether a defendant's motion for compassionate release can or should be granted. The BOP's analysis and determination is, therefore, not entitled to any special deference.

### IV. CONCLUSION

Mr. Shope has established that there exists an extraordinary and compelling reason for his release under the circumstances. As a result, his Motion is **GRANTED**. It is hereby **ORDERED** that Mr. Shope's term of imprisonment be reduced to time served. Further, the BOP is **ORDERED** to immediately release Mr. Shope from custody. The supervised release component of Mr. Shope's sentence is not impacted by this ruling.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**